# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| George Semenchuk, | : | Case No. 1:09CV2018 |
| | : | |
| Petitioner | : | Judge Solomon Oliver, Jr. |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Maggie Bradshaw, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his October 15, 2007 conviction pursuant to a jury trial of one count of driving while under the influence (DUI), with a specification for having had a prior conviction, upon which he was sentenced to five years incarceration, a $10,000 fine, a lifetime driver's license suspension, and a term of three years post-release control.[1]

Petitioner appealed his convictions to the Ohio Eighth District Court of Appeals alleging eleven assignments of error:

    I.     Defendant was denied due process of law when the court overruled his motion to dismiss by reason of a lack of a speedy trial.

    II.    Defendant was denied due process of law when the court

---

[1]A second count of DUI was dismissed at the request of the prosecution, and the jury acquitted petitioner on one count of assault of a peace officer.

1

overruled his motion to suppress.

III.   Defendant was denied due process of law when the court overruled his motion to discharge juror Danny Bullard for cause.

IV.   Defendant was denied due process of law when his refusal to take a test violated his rights under the Fifth and Sixth Amendments.

V.   Defendant was denied due process of law when the court instructed the jury on the adverse inference from Defendant's refusal to submit to a test after having been advised of his rights violated his Fifth Amendment constitutional right.

VI.   Defendant was denied due process of law when the court overruled Defendant's motion to strike a specification alleging a prior conviction.

VII.   Defendant was denied due process of law when his motion for judgment of acquittal was overruled.

VIII   Defendant was denied due process of law when the court sentenced Defendant based on the fact that he had refused to submit to a chemical test or tests.

IX.   Defendant was denied due process of law when he was subjected to a cruel and unusual punishment upon his addiction to alcohol.

X.   Defendant was denied his Sixth Amendment rights when he was sentenced to a maximum term of imprisonment based on judicial factfinding.

XI.   Defendant was denied due process of law when the court sentenced the Defendant to a maximum term of imprisonment of five years based on impermissible considerations.

On February 5, 2009 the appellate court affirmed the conviction and sentence. Petitioner's applications for reconsideration and for certification of a conflict were denied by the appellate court on February 23, 2009.

2

In its opinion, the court summarized the facts in petitioner's case as follows:

> On December 20, 2006, the Cuyahoga County Grand Jury indicted Semenchuk on one count of assault on a peace officer and two counts of driving under the influence of alcohol and/or drug of abuse ("DUI").  Semenchuk pleaded not guilty at his arraignment and a trial was scheduled for October 11, 2007.

> On the day of trial, the trial curt overruled both Semenchuk's motion to suppress the stop of his vehicle and motion to dismiss based on speedy trial violation.  The State also dismissed one count of DUI.

> Jury Trial

> At trial, the evidence established that on August 12, 2006, at approximately 6:00 p.m., Newburgh Heights police officers responded to a Speedway gas station because of a report of an intoxicated male urinating behind the gas station.  When the police arrived, several patrons directed the officer's attention to the individual, who was the subject of the reported infraction.  The officers observed Semenchuk in a grey minivan, driving slowly in a circle around an adjacent parking lot, and ordered him to stop the vehicle.

> When the officers approached, a strong odor of alcohol and urine emanated from the vehicle.  The officers observed an open container of Jagermiester between the two front seats of the vehicle.  The officers also noticed that Semenchuk's shorts were unbuttoned, exposing his genitalia and that he appeared to have urinated on himself.

> The officers asked Semenchuk to exit the vehicle, but when he attempted to step out of the vehicle, he could hardly stand, and had to be propped up against the side of the vehicle.  Semenchuk's speech was slow and slurred.  The officers determined that he was too intoxicated to be safely given a field sobriety test.

> The officers transported Semenchuk to the police station, and after a forty-five minute observation period, the officers asked him to submit to a blood alcohol test.  Semenchuk refused to take the test, spewed profanity, became combative and had to be pepper sprayed.

> On October 15, 2007, the jury found Semenchuk not guilty of

assault on a peace officer, but guilty of DUI. On November 30, 2007, the trial court sentenced him to a prison term of five years, a $10,000 fine, a lifetime driver's license suspension and three years of postrelease control.

Petitioner appealed the appellate court ruling to the Ohio Supreme Court alleging the following eleven propositions of law:

> **Proposition of Law No. I**: A defendant has been denied due process of law when a court fails to compute a speedy trial violation from the date the defendant is issued a traffic citation charging defendant with DUI violations which formed the basis of a subsequent indictment arising out of the same event.

> **Proposition of Law No. II**: A defendant has been denied due process of law when the court overrules a motion to suppress where the arresting officer testifies that the defendant was committing no offense.

> **Proposition of Law No. III**: A defendant has been denied due process of law when the court overrules a motion to discharge a juror who was found to be an assistant to the prosecuting attorney.

> **Proposition of Law No. IV**: A defendant has been denied due process of law when his refusal to take a test violated his rights under the Fifth and Sixth Amendments.

> **Proposition of Law No. V**: A defendant has been denied due process of law when the court instructs a jury on an adverse inference from defendant's refusal to submit to a test after a defendant has been advised of his constitutional rights under the Fifth Amendment.

> **Proposition of Law No. VI**: A defendant has been denied due process of law when the court overrules the motion to strike a specification which alleged a non-existent prior conviction.

> **Proposition of Law No. VII**: A defendant has been denied due process of law when his motion for judgment of acquittal has been denied.

> **Proposition of Law No. VIII**: A defendant has been denied due

4

process of law when a court sentences a defendant based on the fact that he had refused to submit to a chemical test or tests.

**Proposition of Law No. IX**: A defendant has been denied due process of law when he was subjected to a cruel and unusual punishment based upon his addiction to alcohol.

**Proposition of Law No. X**: A defendant has been denied his Sixth Amendment right when he was sentenced to a maximum term of imprisonment based on judicial factfindings.

**Proposition of Law No. XI**: A defendant has been denied due process of law when a court sentences a defendant to a maximum term of imprisonment based upon impermissible and unconstitutional considerations.

On June 17, 2009 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On August 28, 2009 the petitioner filed the instant petition, in which he raises the following seven claims for relief:

**A.** **GROUND ONE:** Denial of Due Process of Law

**Supporting FACTS:** Petitioner was denied due process of law as Petitioner was not tried within applicable speedy trial time. The trial court and the Court of Appeals failed to consider that Petitioner, on the date of his arrest was charged with criminal offenses. These criminal offenses remained pending even though he was later indicted and his right to a speedy trial was therefore denied. These grounds were ignored by the trial court and the Court of Appeals resulting in a denial of due process of law.

**B.** **GROUND TWO:** Fourth and Fourteenth Amendment

**Supporting FACTS:** Petitioner was denied due process of law when his motion to suppress, his arrest and seizure was unconstitutional where the arresting officer stated that Petitioner had committed no offense.

**C.** **GROUND THREE:** Sixth Amendment

5

**Supporting FACTS:** Petitioner was denied a fair and impartial jury when the court overruled a motion to discharge a juror who was related to an assistant Cuyahoga prosecuting attorney.

**D.    GROUND FOUR:** Fifth and Sixth Amendment

**Supporting FACTS:** Petitioner was denied his constitutional rights when his refusal to take a test violated his rights as he was informed that he need not speak to the officer and invoked his Miranda rights.

**E.    GROUND FIVE:** Fourteenth Amendment

**Supporting FACTS:** Petitioner was denied due process of law when the court instructed the trial jury that they could draw an adverse inference from Petitioner's refusal to submit to a test after Petitioner had been advised of his constitutional rights under the Fifth Amendment to not speak or answer questions.

**F.    GROUND SIX:** Fourteenth Amendment

**Supporting FACTS:** Petitioner was denied due process of law when his motion for judgment of acquittal was denied and that he was allowed to be convicted for a non-offense which enhanced the degree of the offense which consisted of an invalid prior conviction.

**G.    GROUND SEVEN:** Eighth and Fourteenth Amendment

**Supporting FACTS:** Petitioner was sentenced to a maximum term of imprisonment.   The sentencing judge based his maximum sentence on the fact that Petitioner had invoked his constitutional right to refuse to submit to a chemical test or tests.   Moreover, the evidence showed that Petitioner was addicted to alcohol and thus he was subjected to a cruel and unusual punishment based upon his addiction to alcohol.  The trial court also violated Petitioner's Sixth Amendment right when the court sentenced Petitioner to a maximum term of imprisonment based on impermissible judicial factfinding.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L.

6

No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed

after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[2]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254

(d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable

application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S.

420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law," or "if the state court confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with

the state court adjudication involving an "unreasonable application of clearly established Federal

law, as determined by the Supreme Court" "if the state court identifies the correct governing legal

rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state

---

[2]There are no issues of untimeliness or procedural default in this case.

prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.  Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand.  Id.  See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

In his first claim for relief the petitioner alleges that the trial court violated his constitutional right to a speedy trial.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a speedy trial, the violation of which can only be found upon determination of the length of the delay in bringing the defendant to trial, the reasons for the delay, whether the defendant asserted the right, and the prejudice to the defendant by reason of the delay.  Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972);  United States v. Robinson, 455 F.3d 602, 607 (6th Cir. 2006), cert. denied, 127 S. Ct. 1338 (2007); Maples v. Stegall, 427 F.3d 1020, 1025 (6th Cir. 2005);  United States v. Schreane, 331 F.3d 548, 553 (6th Cir.), cert. denied, 124 S.Ct. 448 (2003).  While the factors are related and no one factor is determinative, Schreane, supra at 553, if the length of the delay is excessive, prejudice to the defendant may be presumed, Doggett, supra at 655-56.  In fact, as length of delay is the threshold factor the other factors need not be considered if the delay is not deemed sufficiently long.  Barker, supra at 530.  A one-year delay in bringing a defendant to trial is generally found to be

8

presumptively prejudicial. Doggett, supra at 652 n.1. On the other hand, a delay of five months

is not "per se excessive under the Sixth Amendment." United States v. Howard, 218 F.3d 556, 564

(6th Cir. 2000), citing United States v. White, 985 F.2d 271, 275 (6th Cir. 1993) (a six and one-half

month delay was not sufficiently long to be deemed prejudicial); and United States v. Holyfield,

802 F.2d 846 (6th Cir. 1986) (a five month delay was constitutionally permissible). See also,

United States v. Cope, 312 F.3d 757, 776-77 (6th Cir. 2002) ( a delay of eight months and three

weeks was not found to be a presumptively prejudicial delay).

In rejecting petitioner's claim of denial of his right to a speedy trial, the state appellate

court held in pertinent part as follows:

> In his first assignment of error, Semenchuk argues that the trial
> court violated his right to a speedy trial. We disagree.
>
> The Sixth Amendment of the United States Constitution and Section
> 10, Article I of the Ohio Constitution guarantee an accused the right
> to a speedy and a public trial. The standard of review that appellate
> courts apply to speedy trial issues is to count days as set forth in
> R.C. 2945.71. [*State v. Stevens*, Cuyahoga App. No. 87693, 2006-
> Ohio-5914.][3]
>
> Trial must be held within 270 days of an arrest in order to effectuate
> a speedy trial. [See R.C. 2945.71(C)(2)]. However, pursuant to
> R.C. 2945.71(E) each day spent in jail "on a pending charge" acts
> as three days toward speedy trial time, thus 90 days time in jail
> would equate to 270 days using the triple-count provision.
>
> In the instant case, the record indicates that the Newburgh Heights
> police officers arrested Semenchuk on August 12, 2006, and
> transported him to the Bedford Heights jail to undergo
> detoxification. The following day, Semenchuk was released from
> jail without the Bedford Court setting a bond.
>
> After Semenchuk was indicted on December 20, 2006, he was

---

[3]This Court has incorporated the appellate court's citations (which had appeared in footnotes) into the text of the
opinion.

summoned by certified mail to the address he provided when he was arrested.  On January 5, 2007, Semenchuk failed to appear for his arraignment and the court issued a capias for his arrest.

On July 20, 2007, Semenchuk was arrested. He was arraigned on July 24, 2007, and the trial court set Semenchuk's bond at $10,000. Semenchuk did not post bond and remained in jail until trial began on October 11, 2007.

Semenchuk now argues that his speedy trial time began on August 12, 2006, when he was originally arrested, and more than 270 days elapsed before he was brought to trial, thus his motion to dismiss should have been granted. We are not persuaded.

The constitutional right to a speedy trial arises when a person becomes an "accused." [*State v. Fitzgerald* (Mar. 3, 1994), Cuyahoga App. No. 65435, quoting *United States v. Marion* (1971), 404 U.S. 307, 313, 30 L.Ed.2d 468, 92 S.Ct. 455.]  A person becomes accused when prosecution is initiated against him, either through "formal indictment or information or [by] the actual restraints imposed by arrest and holding to answer a criminal charge ***." [Id., *Marion* at 320.]

The Speedy Trial Clause's core concern is impairment of liberty. [*United States v. Loud Hawk* (1986), 474 U.S. 302, 312, 88 L.Ed.2d 640, 106 S.Ct. 648.] Thus, when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause. [Id. at 312.]

We have previously held that the speedy trial provisions of R.C. 2945.71 do not apply until a defendant is arrested for the particular offense from which he seeks discharge. [See *State v. Todd* (Mar. 31, 1983), Cuyahoga App No. 45383; *State v. Basca* (June 3, 1982), Cuyahoga App. No. 43997.] Therefore, it is the arrest on a pending charge that commences the running of the speedy trial statute.

Upon review, the calculation relating to Semenchuk's right to a speedy trial did not begun to run until well after the charges were filed against him; until he was arrested on July 20, 2007.  Although Semenchuk was initially detained on August 12, 2006, he was released the following day, after undergoing detoxification, without any condition of bond.  Since Semenchuk was not being held pending the filing of charges, the alleged delay between his original

10

detainment without charges being filed and the subsequent filing of the charges is without consequence to his statutory right to a speedy trial.

As previously noted, after Semenchuk's arrest on July 20, 2007, he remained in jail without posting bond.  Pursuant to R.C. 2945.71(E), each day Semenchuk remained in jail counted as three days toward speedy trial time, thus, he had to be brought to trial within 90 days of his arrest.  In calculating this time, we commence counting the day after Semenchuk's arrest. [See, *State v. Steiner* (1991), 71 Ohio App.3d 249, 250-251 ("The day of the arrest is not to be included when computing the time within which a defendant must be brought to trial.") See, also, *State v. McCornell* (1993), 91 Ohio App.3d 141, 145.]

Consequently, Semenchuk had to be brought to trial 90 days from July 21, 2007, or by October 18, 2007.  Since Semenchuk was brought to trial on October 11, 2007, his right to a speedy trial was not violated.  Thus, the trial court did not err in denying the motion.  Accordingly, we overrule the first assigned error.

The foregoing decision by the state appellate court that petitioner's constitutional right to a speedy trial was not violated neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  Petitioner's trial began well within the time set out by statute, so there was no excessive delay.  Accordingly, petitioner's first claim for relief is without merit.

In his second claim for relief the petitioner argues, as he did in the state courts, that the trial court improperly denied his motion to suppress evidence seized pursuant to his arrest, which he alleged was unreasonable under the Fourth Amendment.  The respondent argues that the instant petition should be dismissed as petitioner's claims of Fourth Amendment violations were fully and fairly litigated in the state courts.

Full and fair litigation by the state courts of a Fourth Amendment claim based on alleged

11

unconstitutional search and seizure precludes federal habeas corpus review of that claim. Kuhlmann v. Wilson, 477 U.S. 436 (1986); Stone v. Powell, 428 U.S. 465, 494 (1976). See also, Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001) ("Petitioner's Fourth Amendment claim is not reviewable."); Marsack v. Howes, 300 F.Supp.2d 483, 493 (E.Dist.Mich. 2004) ("[T]he limitation on review of Fourth Amendment claims imposed by the Supreme Court in *Stone v. Powell*,...precludes relief on the basis of that Amendment."). Cf, Reedus v. Stegall, 79 Fed. Appx.93, 96 (6th Cir. October 14, 2003). In order for a Fourth Amendment claim of this sort to be fully and fairly litigated, there must be a state procedural mechanism which provides the opportunity to raise the claim, and the actual presentation of the claim must not be impeded by a failure of such procedural mechanism. Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982), cert. denied, 459 U.S. 948 (1982). It has been held that the State of Ohio provides an adequate state procedural mechanism to raise a Fourth Amendment claim in Rule 12 of the Ohio Rules of Criminal Procedure, which provides for a pretrial motion to suppress, and then by providing the opportunity of a direct appeal of the ruling on motion to suppress. Riley v. Gray, supra at 526.

The petitioner employed the state procedural mechanism, as illustrated by the following summary by the state appellate court:

> In the second assigned error, Semenchuk argues that the trial court erred in denying his motion to suppress because the Newburgh Heights police violated his rights under Fourth Amendment by stopping his vehicle. We disagree.

> An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. [*State v. Boulis*, Cuyahoga App. No. 86885, 2006-Ohio-3693.] Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve

questions of fact and evaluate the credibility of witnesses. [See *State v. Robinson* (1994), 98 Ohio App.3d 560; *State v. Rossiter* (1993), 88 Ohio App.3d 162; *State v. Lewis* (1992), 78 Ohio App.3d 518; *State v. Warren* (Aug. 12, 1991), 4ᵗʰ Dist. No. 90CA7.]

The credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. [See *State v. Mills* (1992), 62 Ohio St.3d 357; *State v. Fanning* (1982), 1 Ohio St.3d 19.] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. [See *State v. Harris* (1994), 98 Ohio App.3d 543.]

The Fourth Amendment to the Constitution of the United States and Section 14, Article I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. Evidence obtained by the State in violation of that prohibition must be suppressed from use by the State in its criminal prosecution of the person from whom it was seized. The purpose of suppression is not to vindicate the rights of the accused person, who may very well have engaged in illegal conduct, but to deter the State from such acts in the future. [*United States v. Calandra* (1974), 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561; *Stone v. Powell* (1976), 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067.] The rule is also applied to protect the integrity of the court and its proceedings. [*United States v. Payner* (1980), 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468.]

Searches and seizures conducted without the authority of a prior judicial warrant are unreasonable per se, and therefore illegal. [*Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.] The State may, nevertheless, prove that its warrantless search was not unreasonable, and thus not illegal, if the State demonstrates that its Officer acted according to one of several exceptions to the warrant requirement when the search and seizure was performed. [Id.; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.] If the State meets that burden, suppression of the evidence seized is not proper.

In order to constitutionally stop a vehicle, an officer must, at a minimum, have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and articulable facts, that the vehicle should be stopped in the interests of public safety. [*State v. Moore,* 3ʳᵈ Dist.

13

No. 9-07-60, 2008-Ohio-2407 citing *State v. Chatton* (1984), 11 Ohio St.3d 59, 61, certiorari denied by 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116. *State v. Purtee,* 3rd Dist. No. 8-04-10, 2006-Ohio-6337, citing *State v. Norman* (1999), 136 Ohio App.3d 46, 53-54, 1999-Ohio-961.

An officer's "reasonable suspicion" is determined based on the totality of the circumstances. [*State v. Andrews*, 3rd Dist. No. 2-07-30, 2008-Ohio-625, citing *State v. Terry* (1998), 130 Ohio App.3d 253, 257, citing *State v. Andrews* (1991), 57 Ohio St.3d 86, 87.] Specific and articulable facts that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. [*Purtee,* 2006-Ohio-6337, at ¶9, citing *State v. Gaylord*, 9th Dist. No. 22406, 2005 Ohio 2138, ¶9, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-179; *State v. Davison,* 9th Dist. No. 21825, 2004-Ohio-3251, ¶6.]

Applying these rules of law sub judice, we find that Semenchuk's arguments lack merit. At the suppression hearing, Officer Szelenyl testified that after being dispatched to the gas station, based on a report of an intoxicated male urinating in plain sight, several patrons pointed out Semenchuk. Officer Szelenyl testified that he observed Semenchuk in a grey van, driving slowly in circles around an adjacent parking lot. Officer Szelenyl testified that he asked Semenchuk to stop the vehicle, and upon approaching the stopped vehicle, a strong odor of alcohol and urine emanated from the vehicle.

In addition, Officer Szelenyl testified that he observed an open bottle of liquor between the driver's and passenger's seats. He also observed that Semenchuk's shorts were unbuttoned and unzipped causing the area of his crotch to be exposed. Officer Szelenyl testified that Semenchuk's speech was slow and slurred. Officer Szelenyl further testified that when he asked Semenchuk to step out of the vehicle, Semenchuk was unable to stand and had to be propped up against the side of the vehicle.

Here, based on the totality of the circumstances, Officer Szelenyl had a reasonable suspicion that Semenchuk might be driving impaired; and as such, Semenchuk's driving constituted a public safety hazard. Consequently, the investigatory traffic stop was permissible pursuant to Officer Szelenyl's reasonable articulable

14

> suspicion that Semenchuk's continued operation of his vehicle was
> a public safety hazard.  Consequently, the trial court properly
> denied the motion to suppress. Accordingly, we overruled the
> second assigned error.

Petitioner made full use of the state procedural mechanisms available to raise his claims of violation of his Fourth Amendment rights and there is no evidence that presentation of his claims was impeded by the failure of such mechanism.  Although petitioner disagrees with the trial court's denial of his motion to suppress, it was reasonable to conclude that the totality of the circumstances (including reports of an intoxicated male urinating in public, witnesses pointing to petitioner's van, strong odors of alcohol and urine from within the van, open liquor bottle, unbuttoned and unzipped shorts with exposed crotch, slurred speech, and inability to stand) contributed to the officer's reasonable suspicion that criminal behavior had occurred.  Consequently, petitioner's second claim for relief is without merit.

In his third claim for relief the petitioner alleges that he was denied his constitutional right to a fair and impartial jury by reason of the fact that one juror was the father of an assistant county prosecutor for Cuyahoga County.

A criminal defendant's right to a fair and impartial jury is guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.  Wolfe v. Brigano, 232 F.3d 499, 501 (6th Cir. 2000), citing Morgan v. Illinois, 504 U.S. 719 (1992).  A trial court's determination as to a prospective juror's impartiality is a factual determination to which a presumption of correctness is applied in the context of a habeas case.  Williams v. Bagley, 380 F.3d 932, 953 (6th Cir. 2004); Bowling v. Parker, 344 F.3d 487, 519 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004).  Affording such deference to a trial court is necessary in a habeas case, as the trial court is in the best position to assess the credibility of the jurors during voir dire.  Reynolds v. Bagley, 498 F.3d 549, 556 (6th

Cir. 2007), citing Patton v. Yount, 467 U.S. 1025 (1984).  A juror who claims to be able to set

aside his or her opinions in order to reach a verdict based on the evidence presented, is deemed

impartial.  Patton v. Yount, supra at 1037, n.12, citing Irving v. Dowd, 366 U.S. 717, 723 (1961).

The petitioner bears the burden of proving actual bias on the part of the juror in question.  Zuern

v. Tate, 336 F.3d 478, 486 (6th Cir. 2003).

      In the present case, prior to learning of Mr. Bullard's connection to the prosecutor's office,

the trial court inquired as to his ability to be impartial:

> The Court: What do you think about this case, Mr. Bullard?  Can
> you be a fair juror to both sides?
>
> Mr. Bullard: Yes.
>
> The Court: Can you be neutral, sit back and listen and say here is
> the charge— and I will explain to you what the charge is at the end
> of the case.  I will give you an oral and written instruction as to
> exactly what to consider, to prove the two counts.  What are the
> elements of the case? Then you will examine the evidence with the
> other jurors, talk about it, and say, "Did they prove their case, yes
> or no?"  I will give you the standard of proof and you guys make
> your decision and you do it – can you do it?
>
> Mr. Bullard: Yes.
>
> The Court: And I told you about what I talked about yesterday, the
> orphan.  If there were orphans in a room, we would all be emotional
> about it.  We would feel terrible about the orphans if their parents
> were killed or something, but you would have to put the emotion
> aside and make a rational decision on the facts. Can you do it?
>
> Mr. Bullard: Yes.

      Upon the prosecution's questioning of Mr. Bullard about his family, the trial judge learned

about his son's employment with the prosecutor's office:

> Ms. Heindrichs: Do you know any police officers or closely related
> to any of them as friends or family members?

16

> Mr. Bullard: My son works for the Prosecutor's office.
>
> Ms. Heindrichs: Is your son Mark?
>
> Mr. Bullard: Yes.
>
> Ms. Heindrichs: Oh, okay.  Is there anything about that relationship that is going to cause you to be unfair?
>
> Mr. Bullard: No, no, I think it might help.
>
> Ms. Heindrichs: All right.  Thank you.  Nothing further, Your Honor.

The defense also questioned Mr. Bullard, learning that he had watched his son in court, had never heard of the current case, and finally, that he could think of no reason that he should not serve on the jury:

> Mr. Mancino: Anything you can think of as to why you cannot serve on this jury?
>
> Mr. Bullard: No, nothing I can think of.
>
> Mr. Mancino: How about the fact that your son is a co-worker of Miss Heindrichs and works for the Prosecutor's office?
>
> Mr. Bullard: I don't think that would bother me.
>
> Mr. Mancino: All right, thank you.

Although the defense used peremptory challenges to excuse other jurors, none was used to excuse Mr. Bullard, and Mr. Mancino initially represented to the court that he was satisfied with the jury. Mr. Mancino ultimately challenged Mr. Bullard for cause due to his son's employment with the prosecutor's office, which the trial court rejected, finding that the defense could have excused the juror, but chose not to, and that if the prosecution had tried to get the juror excused who had worked with Mr. Mancino's son for many years and with whom he had a close work relationship,

17

he would have also denied that request based upon the juror's representation that he could be

impartial despite the work relationship with someone related to the case.

On appeal, the state appellate court also rejected petitioner's claim of impartial juror,

finding in pertinent part:

> In the third assigned error, Semenchuk argues the trial court erred in overruling his motion to discharge a prospective juror for cause. We disagree.
>
> Removal of a juror is within the sound discretion of the trial court. [*State v. Whitmore* (May 3, 2001), Cuyahoga App. No. 78035, citing *State v. Kelly* (1994), 93 Ohio App.3d 257, 270, citing *State v. Grubb* (1988), 44 Ohio App.3d 94.]   An appellate court applies the abuse of discretion standard of review. [*Metzger v. Al-Ataie*, 4th Dist. No. 02CA11, 2003-Ohio-2784.]  A finding that the trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. [*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.]
>
> Semenchuk argues the trial court should have granted his motion to discharge juror Danny Bullard for cause on the basis that Bullard's son, Mark, is an assistant prosecutor with Cuyahoga County.  We are not persuaded.
>
> During voir dire, Bullard indicated that his son's employment with the prosecutor's office would not affect his ability to be fair, and added that it might even help.  R.C. 2313.42 provides that a juror may be dismissed for cause if he or she cannot be a fair and impartial juror. [*Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169.] Nothing in the record indicates that Bullard could not be fair.
>
> During voir dire, the following exchange ensued with another juror:
>
>> "Mr. Rzewnicki: *** Just one thing I want to say. I do work with – Medical Mutual and I work with Paul Mancino who is, I think, the son of Mr. Paul Mancino.
>>
>> Mr. Mancino: Yeah.
>>
>> Mr. Rzewnicki: Who is an attorney there and so

18

> Paul and I have worked together probably for 10 years. We're not drinking buddies or anything and we don't socialize. We have worked together closely. We have worked together closely for that 10-year period.
>
> The Court: ***Now is there anything about your relationship with Mr. Mancino's son that would affect your ability to be fair and impartial?
>
> Mr. Rzewnicki: Nothing conscious." [Tr. 70-73.]

In overruling defense counsel's [Semenchuk's present counsel was also the trial counsel] motion to discharge Bullard, the trial court reminded defense counsel that Rzewnicki, another juror, indicated that he has worked with defense counsel's son for more than ten years. The trial court added that neither defense counsel or the State sought to discharge Rzewnicki for cause. The trial court further added that although each side could have attempted to excuse Rzewnicki, for cause, he would not have granted it because the juror indicated that he could be fair.

We conclude that the trial court's decision overruling Semenchuk's motion to dismiss Bullard did not amount to an abuse of discretion. The juror indicated that he could be fair and impartial. Accordingly, we overrule the third assigned error.

Applying the deferential standard set forth above, wherein the factual determination of the trial court that the juror could be fair and impartial is afforded a presumption of correctness, and absent any proof of actual bias of that juror provided by the petitioner, this Court is of the opinion that the state court's rejection of petitioner's claim of juror bias neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented. It follows that petitioner's third claim for relief is without merit.

In his fourth claim for relief the petitioner challenges the admission in to evidence of

testimony that he refused to submit to a breathalyzer exam to measure his blood alcohol level.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus.  Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001).  Stated differently, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  Roe v. Baker, 316 F.3d 557, 567 (6ᵗʰ Cir.  2002).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters.  Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001).   In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

In the present case the state appellate court rejected petitioner's challenges to the admissibility of the testimony of Officer Szelenyl, holding in pertinent part:

> In the fourth assigned error, Semenchuk argues that his refusal to submit to the blood alcohol test was used as evidence of guilt and thus violated his Fifth and Sixth Amendments rights. We disagree.
>
> Officer Szelenyl testified that he was unable to perform any field sobriety tests because of Semenchuk's lack of motor skills and inability to stand on his own.  Officer Szelenyl testified that he arrested, *Mirandized* and transported Semenchuk to the police station.  Officer Szelenyl further testified that after Semenchuk had

undergone a forty-five minute observation period, he was asked to submit to a blood alcohol test, which he refused.  Semenchuk now contends that evidence of his refusal violates his Fifth and Sixth Amendments rights.  We are not persuaded.

Relying on *Schmerber v. California* [(1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908] the Supreme Court of Ohio held that the right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution does not apply to the stage where the officer requests a chemical test for alcohol content. [*State v. Matheny* (July 28, 2000), 4th Dist. No. 00CA009, citing *Dobbins v. Ohio Bureau of Motor Vehicles* (1996), 75 Ohio St.3d 533, 537.]  In *Schmerber*, the Supreme Court of the United States held that because the results of a test of a defendant's body fluids are non-testimonial, the police do not violate the constitutional prohibition against self-incrimination contained in the Fifth Amendment by requesting a blood test upon arrest for driving while under the influence of alcohol. [Id., 384 U.S. at 765, 86 S.Ct. at 1832-1833, 16 L.Ed.2d at 916-917.]  Therefore, an appellant has no Fifth Amendment right to consult with an attorney prior to deciding whether to submit to the BAC test. [Id., *Dobbins* at 537.]

The Ohio Supreme Court reached a similar holding regarding a defendant's Sixth Amendment right to counsel.  In *McNulty v. Curry*, [(1975), 42 Ohio St.2d 341, 344] the Court relied on *United States v. Wade* [(1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] in holding that a blood test is merely a preparatory step to the critical stage of the prosecution and thus the Sixth Amendment does not apply.

We conclude that neither Semenchuk's Fifth nor Sixth Amendment rights were violated when Officer Szelenyi asked him to take the blood alcohol test, which he ultimately refused to take.  The law is clear that tests to determine blood alcohol levels are not testimonial.

Accordingly, we overrule the fourth assigned error.

The foregoing ruling of the state appellate court was premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th

21

Cir. 1998).   Nothing in that ruling was contrary to rulings of the United State Supreme Court on a similar question of law, nor did the state court decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in that ruling which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. Petitioner's fourth claim for relief, therefore, is without merit.

Similar reasoning applies to his fifth claim, in which he challenges the trial court's instruction of law to the jury on their consideration of his refusal to take the blood alcohol test.

Issues regarding jury instructions are normally considered to be matters of state law not cognizable in federal habeas corpus.  Brazzell v. Smith, unreported, Case No. 98-1757, 1999 U.S. App. LEXIS 32248, *9 (6th Cir. December 7, 1999), citing Henderson v. Kibbe, 431 U.S. 145 (1977); Herrington v. Edwards, unreported, Case No. 97-3542, 1999 U.S.App. LEXIS 1220, *18-19 (6th Cir. January 26, 1999), citing numerous cases.  Accord, Mitzel v. Tate, 59 F.Supp.2d 705, 719 (N.D.Ohio 1999)(Judge Economus), affirmed, 267 F.3d 524 (6th Cir. 2001), citing Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988) and Eberhardt v. Bordenkircher, 605 F.2d 275, 276 (6th Cir. 1979).  In order to amount to a constitutional violation the challenged jury instruction must have "infected the accused's trial to such a degree as to constitute a clear violation of due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991), quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973).  Accord, Brazzell v. Smith, supra at *9 and Herrington v. Edwards, supra.  If an instruction is ambiguous (but perhaps not erroneous) a due process violation occurs only if it is determined that there is a "`reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle v. McGuire, supra at 73, n.4 (quoting

22

Boyde v. California, 494 U.S. 370, 380 (1990).  Accord, Brazzell v. Smith, supra at *9 and

Herrington v. Edwards, supra at *19.  In that regard, in determining whether habeas corpus relief

is warranted the emphasis must be upon the effect of any error on the jury, as opposed to

sufficiency of the evidence.  Herrington v. Edwards, supra, citing Kotteakos v. United States, 328

U.S. 750, 755, 763-65, 767, 775-76 (1946).

Absent proof of an erroneous instruction, petitioner cannot meet the overall burden of

showing that the state court ruling was either contrary to or involved an unreasonable application

of federal law.

The state appellate court rejected petitioner's challenge to the jury instruction on the issue

of his refusal to take the blood alcohol test, holding in pertinent part:

> In the fifth assigned error, Semenchuk argues the trial court erred
> in instructing the jury that they could infer that he was under the
> influence of alcohol by his refusal to take the blood alcohol test.
> We disagree.
>
> The United States Supreme Court has held that the admission of
> evidence at trial of a defendant's refusal to take a chemical test does
> not violate the defendant's Fifth Amendment privilege against self-
> incrimination or the Fourteenth Amendment right to due process.
> [*South Dakota v. Neville* (1983), 459 U.S. 553, 564-566, 103 S.Ct.
> 916, 74 L.Ed.2d 748.]   The Supreme Court of Ohio has held that
> the trier of fact may consider a defendant's refusal to submit to a
> chemical test as evidence in deciding whether the defendant was
> under the influence of alcohol. [*City of Middleburg Heights v.
> Henniger,* Cuyahoga App. No. 86882, 2006-Ohio-3715, citing
> *Maumee v. Anistik* (1994), 69 Ohio St.3d 339, 1994-Ohio-157.]
>
> Further, the use of the refusal as evidence of a defendant being
> under the influence is controlled by an authorized jury instruction,
> which reads as follows:
>
>> "Evidence has been introduced indicating the
>> defendant was asked but refused to submit to a
>> chemical test of his breath to determine the amount

23

of alcohol in his system, for the purpose of suggesting that the defendant believed he was under the influence of alcohol.  If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol." [Id.]

The record indicates that the trial court gave the above authorized instructions to the jury.  Consequently, Semenchuk's rights were not violated.  Accordingly, we overrule the fifth assigned error.

There is nothing in the foregoing to indicate that the trial court's instructions to the jury were erroneous, particularly since the trial court used the instruction authorized by the state supreme court.  Absent evidence of error in the trial court's instructions to the jury, petitioner has failed to meet his burden of showing that the state court ruling was either contrary to or involved an unreasonable application of federal law.  It follows that petitioner's fifth claim for relief must fail.

Petitioner's sixth claim for relief is a two-part claim, the first presenting a challenge to the sufficiency of the evidence relied upon to convict him, and the second challenging language in the indictment which referenced a specification for having had a prior conviction for DUI.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility

24

of the witnesses.  Herrera v. Collins, 506 U.S. 390, 401-402 (1993);  Jackson v. Virginia, 443 U.S. at 319, n.13;  Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d), in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof, and held in pertinent part:

> In the seventh assigned error, Semenchuk argues the trial court should have granted his motion for acquittal because the evidence was insufficient to support his conviction.  We disagree.
>
> The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*[, (1978), 55 Ohio St.2d 261, syllabus]*:*
>
> > "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[See, also, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23; *State v. Davis* (1988), 49 Ohio App.3d 109, 113.]
>
> *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, [(1991), 61 Ohio St.3d 259, paragraph two of the syllabus] in which the Ohio Supreme Court held:
>
> > "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal

25

conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

After reviewing the evidence in a light most favorable to the State, we find that the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of DUI.

The officers testified that when they were dispatched to the Speedway gas station, several patrons pointed out Semenchuk as the man who had been urinating behind the building in plain view. The officers testified that Semenchuk was in a grey van driving around an adjacent parking lot in tiny circles. The officers testified that upon approaching Semenchuk and ordering him to stop the vehicle, a strong odor of alcohol and urine emanated from the van.

In addition, the officers testified that they observed an open bottle of alcohol between the front seats, and observed that Semenchuk's shorts were unbuttoned and unzipped, causing the area of his crotch to be exposed. Further, the officers testified that when asked to step out of the vehicle, Semenchuk could hardly stand and had to be propped up against the vehicle. Finally, the officers testified that when they asked Semenchuk if he had been drinking, he stated that he was "f'***'ed up."

Consequently, viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved all of the essential elements of the charge beyond a reasonable doubt. Thus, the trial court properly denied Semenchuk's motion for acquittal. Accordingly, we overrule the seventh assigned error.

In finding the evidence sufficient to prove the elements of the crimes charged the state court relied heavily on state authorities, with reference to the proper standard to be applied as defined

26

by federal authorities, arriving at a decision which was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That is particularly so in light of eyewitness identification, strong odors of alcohol and urine from the van, the open bottle of alcohol, unzipped pants with exposed crotch, his inability to stand, and his own declaration that he was "f***ed up" in response to the inquiry as to whether he had been drinking.  As a consequence, the first portion of petitioner's sixth claim for relief is without merit.

As for the second portion of that claim, petitioner contends that flaws in the indictment under which he was charged with the crimes for which he was convicted warrant relief in federal habeas corpus.  This claim for relief must fail for each of several reasons.

Petitioner did not raise this claim in state courts as a violation of a specific federal constitutional right, but rather argued that it was a violation of state law, and, generically, that his constitutional rights were violated, an omission which calls forth the issue of procedural default in the context of a federal habeas corpus proceeding.  In addition, petitioner failed to object to the indictment prior to his conviction.

However, the foregoing aside, this claim is unpersuasive on the merits.

As was stated previously herein, in order to be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, supra at 357.  A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution.  See, Floyd v.

27

Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998);  Serra v.  Michigan Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir.  1993), cert. denied, 510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Accord, Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986).

In addition, it is well-established that there is no federal constitutional right to be charged in an indictment.  Hurtado v. California, 110 U.S. 516, 537-38 (1884); Branzburg v. Hayes, 408 U.S. 665 (1972); Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984); Watson v. Jago, 558 F.2d 330, 337 (6th Cir. 1977).   "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense."  Koontz, supra at 369, citing In Re Ruffalo, 390 U.S.544 (1968); Blake v. Morford, 563 F.2d 248 (6th Cir. 1977); and Watson v. Jago, supra at 338.  Such fair notice is given when the offense charged is described with "precision and certainty so as to apprise the accused of the crime with which he stands charged." Ibid.

That having been said, claims of error in an indictment are state law claims not cognizable in habeas corpus unless it can be shown that the defendant was denied fair notice of the charges against him or her so as to adequately prepare a defense.

The state appellate court held that the indictment did not violate petitioner's constitutional rights, stating in pertinent part:

> In the sixth assigned error, Semenchuk argues the trial court erred in overruling his motion to strike a specification of a prior conviction for DUI.  We disagree.

28

The record indicates that Count 3 of the indictment included a specification that Semenchuk had previously been convicted of a DUI.  Because the journal entry referred to the conviction as a fifth degree, instead of a fourth degree felony, Semenchuk now argues that the specification should have been dismissed.  We are not persuaded.

At trial, defense counsel stipulated to Semenchuk's conviction, after first indicating that he thought the prior conviction was a fourth degree felony.  A stipulation to the fact of a prior conviction constitutes a stipulation as to the conviction's constitutionality, unless the defendant raises the constitutional challenge at the trial where the conviction is used to enhance a penalty.

Here, the record indicates that trial counsel did not raise a constitutional challenge to the prior conviction, instead trial counsel's assertion was that the conviction was labeled incorrectly.  Given that Semenchuk did not set forth any challenge to the constitutionality of the prior conviction at the trial court level, he may not do so now.  Accordingly, we overruled the sixth assigned error.

This allegation of violation of state law fails to rise to the level of a denial of fundamental fairness and, therefore, is not cognizable in federal habeas corpus.  There was no indication that the defendant was denied fair notice of the charges against him  However, even if the allegation was to be considered, this Court would not find that the decision of the state appellate court on the foregoing matter of state law was either objectively unreasonable or that it involved an unreasonable application of federal law.  Consequently, the second part of petitioner's sixth claim for relief must fail.

In petitioner's seventh claim for relief he challenges the sentence imposed upon him by the trial court, arguing that he was improperly sentenced to the maximum prison term based upon judicial factfinding, which incorporated the fact that he refused to submit to a blood alcohol test, he was addicted to alcohol, and that he was a danger to the community.  Petitioner claims that the

imposition of the maximum term of imprisonment constitutes cruel and unusual punishment and, therefore, violates his constitutional rights.

As to that portion of this claim for relief in which petitioner argues that the sentence imposed upon him is disproportionate to the offense committed and, therefore, constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution, this Court disagrees.

The Sixth Circuit Court of Appeals has summarized the case law pertinent to this issue in Friday v. Pitcher, 99 Fed. Appx. 568, 573-574, 2004 U.S.App. LEXIS 4401 (6th Cir. 2004), as follows:

> The United States Supreme Court has held that the *Eighth Amendment* does not require strict proportionality between the crime and sentence. *Harmelin v. Michigan*, 501 U.S. 957, 965, 115 L.Ed.2d 836, 111 S.Ct. 2680 (1991) (plurality opinion). *See also Rummel v. Estelle, 445 U.S. 263, 63 L.Ed.2d 382, 100 S.Ct. 1133 (1980); Solem v. Helm*, 463 U.S. 277, 77 L.Ed.2d 637, 103 S.Ct. 3001 (1983). Rather, it only forbids "extreme sentences" that are "grossly disproportionate" to the crime. *Harmelin, 501 U.S. at 1001.* Further, as the Supreme Court recently observed in *Lockyer v. Andrade, 538 U.S. 63, 155 L.Ed.2d 144, 123 S.Ct. 1166 (2003),* "our precedents in this area have not been a model of clarity." *Id. at 72* (AEDPA case). Nonetheless, "through this thicket of *Eighth Amendment* jurisprudence, one governing legal principle emerges as 'clearly established' under *§2254(d)(1):* A gross disproportionality principle is applicable to sentences for terms of years." *Id. See also Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003).* ("The *Eighth Amendment,* which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"). On the other hand, as the Supreme Court observed in *Lockyer,* its cases "exhibit a lack of clarity regarding what factors may indicate gross disproportionality." *Lockyer, 538 U.S. at 72.*

The petitioner in that case attempted to argue that because he was a juvenile when he committed the crimes, his lengthy sentence was "grossly disproportionate," a proposition rejected by the Sixth

30

Circuit:

> Petitioner focuses on his juvenile status as the factor that tips his sentence into a category of "grossly disproportionate." The aforementioned Supreme Court cases do not provide any direct support for this argument. *Cf. Lockyer, 528 U.S. 63* (holding that state court decision affirming the petitioner's two consecutive terms of twenty-five years to life in prison for a "third strike" conviction was not "contrary to" or an "unreasonable application" of "clearly established" gross disproportionality principles set forth by *Rummel, Solem,* and *Harmelin*); *Harmelin, 501 U.S. 957, 115 L.Ed.2d 836* (holding that life imprisonment without possibility of parole for possessing cocaine did not raise an inference of gross proportionality even though the defendant was a first-time offender); *Solem, 463 U.S. 277, 77 L.Ed.2d 637, 103 S.Ct. 3001* (holding that a life sentence without possibility of parole for a seventh nonviolent felony violated the *Eighth Amendment*).  Here, Petitioner, although a first-time offender, committed a violent felony without justification.  Furthermore, because he received a lesser offense of second-degree murder, parole is a possibility. In sum, it cannot be said that the Michigan Court of Appeals decision is contrary to, or an unreasonable application of, clearly established federal law.  The district court did not err in denying the petition for writ of habeas corpus on this basis.

The state appellate court rejected petitioner's Eighth Amendment claims, holding in pertinent part:

> Because of the substantial interrelationship of the remaining assigned errors, we shall address them together.  Semenchuk argues the trial court erred in sentencing him to the maximum prison term based on judicial fact finding, including his refusal to submit to a chemical test, his addiction to alcohol and his danger to the community.  We disagree.
>
> After the jury found Semenchuk guilty of DUI, the trial court ordered a pre-sentence investigative report ("PSI").  On November 30, 2007, the trial court conducted a sentencing hearing.  At the hearing, the trial court reviewed the PSI, which indicated that Semenchuk had twelve prior DUI arrests, that he was always combative, and that he routinely refused to submit to chemical testing.

31

The trial court also reviewed the facts of the case, revealing that police officers were dispatched to the gas station because Semenchuk was urinating in plain view of families with children. The trial court added that the police officers found Semenchuk driving around in circles and that Semenchuk was so intoxicated that he could not stand on his own.

Finally, the trial court concluded that the PSI and Semenchuk's current behavior revealed that he had not been rehabilitated and that he posed a danger to the public.  The trial court then sentenced Semenchuk to a prison term of five years, which he now argues is cruel and unusual punishment.  We are not persuaded.

* * * * *

R.C. 2929.11(A) provides that a trial court that sentences an offender for a felony conviction must be guided by the "overriding purposes of felony sentencing." [*State v. McCarroll*, Cuyahoga App. No. 89280, 2007-Ohio-6322.] Those purposes are "to protect the public from future crime by the offender and others and to punish the offender." [Id.] R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. [Id.]

* * * * *

Here, the jury found Semenchuk guilty of DUI, a third degree felony, which carries possible prison terms of one, two, three, four, or five years. [R.C.2929.14(A)(3).] The trial court sentenced Semenchuk to a prison term of five years, which is within the statutory range.

Our review of the record indicates that the trial court considered the overriding purposes of felony sentencing.  Since the sentence imposed is within the statutory range for Semenchuk's conviction, the trial court followed the statutory process for felony sentencing, and the record is devoid of any evidence of inconsistency or disproportionality, we find that his sentence is supported by the record and not contrary to law.

The state appellate court having upheld the trial court's imposition of the sentences,  those

32

sentences were within the penalty set by statute, and neither sufficiently "extreme" or "grossly disproportionate" so as to violate the Eighth Amendment.

In another portion of his seventh claim for relief the petitioner challenges the sentence imposed by the trial court as having been the maximum prison term permitted, which he alleges was imposed without reliance upon factual findings made by a jury to enhance his sentence under the law, which he believes to have been in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).

In Blakely, the Court held that violations of the Sixth Amendment to the United States Constitution could be avoided if "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  Although the Blakely case limited the authority of the trial judge to impose sentences in excess of the maximum provided by law, the authority of a sentencing judge to impose a sentence within the prescribed statutory range for a particular offense was not  limited in the same way.

In January of 2005 the United States Supreme Court held, in United States v. Booker, 543 U.S. 220, 245, 259 (2005), that the mandatory provisions of the United States Sentencing Guidelines were unconstitutional under the Blakely decision, but they could be used in an advisory manner.

The Ohio Supreme Court applied the Apprendi, Blakely, and Booker decisions to the Ohio sentencing guidelines and held that parts of Ohio's felony sentencing scheme were unconstitutional, including Ohio Revised Code §§ 2929.14(B), 2929.19(B)(2), and 2929.41, which

provide for judicial findings of fact in order to rebut presumptions in sentencing terms; §2929.14(C), providing for the imposition of maximum sentences; §2929.14(D)(2)(b), findings for repeat violent offender; §2929.14(D)(3)(b), major drug offenders; §2929.14(E)(4), providing for the imposition of consecutive sentences;[4] and §2953.08 (G), statutory findings for consecutive sentences in the appellate record.  State v. Foster, 109 Ohio St.3d 1, 62-67, 83, 845 N.E.2d 470 (2006).  The constitutional violation was premised upon the fact that those provisions require judicial findings of fact beyond those either rendered by the jury or admitted to by the defendant. Ibid.  Those offending portions of the sentencing code were severed, *but trial courts retained full discretion to impose sentences within the statutory range while no longer being required to make findings of fact or to articulate reasons for imposing maximum or consecutive sentences*.  Id. at 100.  As the Court did in Booker, the Ohio Supreme Court determined that its holding in Foster was to be applied to any case pending on direct appeal, and that where sentences were found to have been constitutionally invalid, remanding and re-sentencing were in order.

Challenges to the Booker[5] decision have been repeatedly denied by the federal courts. United States v. Barton, 455 F.3d 649, 657 (6th Cir. 2006), cert. denied, 127 S.Ct. 748 (2006); United States v. Davenport, 455 F.3d 366 (4th Cir. 2006); United States v. Austin, 432 F.3d 598, 599-600 (5th Cir. 2005); United States v. Vaughn, 430 F.3d 518 (2nd Cir. 2005), cert. denied, 547 U.S. 1060 (2006); United States v. Perez-Ruiz, 421 F.3d 11 (1st Cir. 2005), cert. denied, 546 U.S.

---

[4]On January 14, 2009 the United States Supreme Court decided Oregon v. Ice, 555 U.S. ___, 129 S.Ct. 711, 2009 U.S. LEXIS 582 (2009), which abrogated this portion of the Foster decision and held that judicial factfinding to determine whether consecutive sentences should be imposed does not violate Apprendi/Blakely.  In so doing, the Court expanded the scope of judicial factfinding discretion in sentencing.

[5]Significant in light of the fact that the Foster and Booker decisions employed similar rationales to craft similar remedies.

34

1120 (2006); United States v. Dupas, 419 F.3d 916, (9th Cir. 2005), cert. denied, 547 U.S. 1011

(2006); United States v. Jamison, 416 F.3d 538 (7th Cir. 2005) ("Jamison also had fair warning that

distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in

the United States Code. Jamison had sufficient warning of the possible consequences of his

actions, and his sentence does not run afoul of any of the core concepts discussed in Rogers.")

In addition, challenges similar to that raised by the petitioner have also been rejected by

judges in this district. See, Watkins v. Williams, Case No. 3:07CV1296 (N.D.Ohio June 17, 2008)

(J. Adams) (The Foster decision did not violate due process as it did not alter the fact that the

defendant was well aware of the maximum penalty he faced at the time of his crime.); Lyles v.

Jeffreys, Case No. 3:07CV1315 (N.D.Ohio April 24, 2008) (J. Oliver) (The trial court's re-

sentencing did not violate petitioner's Due Process right not to be re-sentenced pursuant to a law

which violates the Ex Post Facto Clause, as petitioner "had fair notice of the acts that were

prohibited and the degree of punishment which the Ohio legislature wished to impose on those who

committed those acts."); McGhee v. Konteh, Case No. 1:07CV1408 (N.D.Ohio Feb. 1, 2008) (J.

Nugent) (Affirming Magistrate Judge Limbert's conclusion that "Since the *Foster* decision does

not change the elements necessary to convict Petitioner or the potential maximum sentence that

Petitioner faced for a first degree felony, *Foster* does not raise an ex post facto-type due process

violation. Moreover, the trial judge's application of *Foster* to Petitioner's case in particular did

not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.")

The appellate court also rejected this aspect of petitioner's challenges to his sentence,

holding in addition to the foregoing:

> In *State v. Foster*, [109 Ohio St.3d 1, 2006-Ohio-856.] the Ohio
> Supreme Court held that judicial fact-finding to overcome a

35

maximum sentence is unconstitutional in light of *Blakely v. Washington* [(2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403]. The *Foster* court severed and excised, among other statutory provisions, R.C. 2929.14(C), because imposing maximum sentences requires judicial fact-finding [Id., applying *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, *Blakely*, and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435].

"After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." [Id. at ¶99.] As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive, or more than the minimum sentence." [*Foster* at paragraph seven of the syllabus; *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, at paragraph three of the syllabus.]

Thus, post-*Foster*, we now apply an abuse of discretion standard in reviewing a sentence that is within the statutory range. [*State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912. See, also, *State v. Lindsay*, 5th Dist. No. 06CA0057, 2007-Ohio-2211; *State v. Parish*, 6th Dist. No. OT-07-049, 2008-Ohio-5036; *State v. Bunch*, 9th Dist. No. 06MA106, 2007-Ohio-7211; and *State v. Haney*, 11th Dist. No. 2006-L-253, 2007-Ohio-3712.]

An abuse of discretion is more than an error in judgment or law; it implies attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. [*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.] Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. [*State v. Murray*, 11th Dist. No. 2007-L-098, 2007-Ohio-6733, citing *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 1993-Ohio-122.]

In *Foster* [109 Ohio St.3d 1, 2006-Ohio-856], the Ohio Supreme Court held that R.C. 2929.11 must still be followed by trial courts when sentencing offenders. The Court held that R.C. 2929.11 does not mandate judicial fact-finding; rather, the trial court is merely to "consider" the statutory factors set forth in this section prior to sentencing. [Id.]

36

R.C. 2929.11(A) provides that a trial court that sentences an offender for a felony conviction must be guided by the "overriding purposes of felony sentencing." [*State v. McCarroll*, Cuyahoga App. No. 89280, 2007-Ohio-6322.] Those purposes are "to protect the public from future crime by the offender and others and to punish the offender." [Id.] R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. [Id.]

We have previously held that judicial fact-finding is not required under R.C. 2929.11. [See *State v. Georgakopoulos*, Cuyahoga App. No. 81934, 2003-Ohio-4341.] Thus, trial courts must merely "consider" the statutory factors before imposing sentence. [See *Foster.*] Further, a comparison of similar cases was not mandated under R.C. 2929.11(B), noting that "[e]ach case is necessarily, by its nature, different from very other case just as every person is, by nature, not the same." [*State v. Wheeler*, 6th Dist. No. L-06-1125, 2007-Ohio-6375. See, also, *State v. Donahue*, 6th Dist. No. WD-03-083, 2004-Ohio-7161.]

Here, the jury found Semenchuk guilty of DUI, a third degree felony, which carries possible prison terms of one, two, three, four, or five years. [R.C. 2929.14(A)(3)] The trial court sentenced Semenchuk to a prison term of five years, which is within the statutory range.

Our review of the record indicates that the trial court considered the overriding purposes of felony sentencing.  Since the sentence imposed is within the statutory range for Semenchuk's conviction, the trial court followed the statutory process for felony sentencing, and the record is devoid of any evidence of inconsistency or disproportionality, we find that his sentence is supported by the record and not contrary to law.

Further, we find no abuse of discretion in the trial court's determination to impose a maximum sentence.  Accordingly, we overrule the remaining assigned errors.

From the foregoing it is clear that the state appellate court held that there was no constitutional violation in petitioner's sentencing.  Foster did not change the potential maximum

37

sentence that the petitioner faced if he committed the crime with which he was ultimately charged, nor did it change the elements necessary to convict him of that crime or deprive him of a defense which had been available at the time he committed the crimes.  In addition, he was informed that his sentence would fall within the proscribed ranges for crimes upon which he entered his plea. Petitioner knew that any thought of receiving a minimum sentence he may have entertained prior to his sentencing was always vulnerable to change by the sentencing court.

To the extent that the petitioner argues that the severance remedy imposed by Foster is somehow parallel to that imposed by the California Supreme Court, the latter of which has been deemed unconstitutional by the United States Supreme Court in Cunningham v. California, 549 U.S. 270 (2007), this Court disagrees.  That argument was analyzed and rejected by another court within this district in pertinent part as follows:

> Finally, petitioner contends that in light of the Supreme Court's recent decision in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), "a state court cannot apply the *Booker* severance [remedy] to state statutes in the manner that the Ohio Supreme Court applied *Booker* to Ohio's sentencing statutes" in *Foster*. (Doc. 14, pp. 15-18).  The Court disagrees with this contention.

> In *Cunningham*, 127 S.Ct. At 860, the Court evaluated the constitutionality of California's determinate sentencing law ("DSL"), under which an offense was punishable by one of three precise prison terms: a lower term of 6 years, a middle term of 12 years, or an upper term of 16 years.  Under the DSL, the trial judge was required to sentence to petitioner to the middle prison term "unless there [we]re circumstances in aggravation or mitigation of the crime" as determined by the court based on certain facts established by a preponderance of the evidence.  *See id*. at 861-62. The Supreme Court held that "[b]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt,"...the DSL violates [the Sixth Amendment]" in light of *Apprendi*, *Blakely* and *Booker*.  *Id*. at 868.

38

The Court stated that "[w]hile '[t]hat should be the end of the matter'" under *Blakely*, the California Supreme Court had held otherwise in another case based on the determination that the upper term of the three-tier system, as opposed to the middle term, qualified as "the relevant statutory maximum," and therefore, the "operation and effect" of the DSL was to "simply authorize[] a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within as statutorily prescribed sentencing range."  See id.  The Supreme Court stated that in so ruling, the California Supreme Court ultimately had "relied on an equation of California's DSL system to the post-*Booker* federal system," wherein the "level of discretion available to a California judge in selecting which of the three available terms to impose...appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-*Booker* sentencing.  *Id*. at 869-70.

The Supreme Court held that contrary to the California Supreme Court's determination, "our decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum."  *Id*. at 868, 871.  Moreover the Court found that the California Supreme Court's "attempted comparison [to the post-*Booker* federal system was] unavailing." *Id*.   The Court reasoned in pertinent part:

> California's DSL does not resemble the advisory system the *Booker* Court had in view.   Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range."   *Booker*, 543 U.S. at 233....Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies....

> ....Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment.  It is comforting, but beside the point, that California's system requires judge-determined DSL sentences to be reasonable. *Booker*'s remedy for the Federal Guidelines, in

39

> short, is not a recipe for rendering our Sixth Amendment case law toothless.

*Id*. at 870.

> The Court went on to point out several states had modified "their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing...by calling upon the jury-either at trial or in a separate sentencing proceeding–to find any fact necessary to the imposition of an elevated sentence."  *Id*. at 871.  The Court further noted: "Other States have chosen to permit judges genuinely 'to exercise broad discretion...within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal."  *Id*. (quoting *Booker*, 543 U.S. at 233).

> Here, as in *Booker*, and in contrast to *Cunningham*, Ohio's challenged sentencing scheme permitted the trial court to exercise discretion in the selection of an appropriate sentence within a range capped at a statutory maximum.  As the *Cunningham* Court indicated, by excising the provisions that rendered the scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker*, 542 [sic] U.S. at 233, "encounters no Sixth Amendment shoal."

Hooks v. Sheets, Case No. 1:07CV0520 (Report and Recommendation of Magistrate Judge Timothy Hogan at 19-21)(Adopted by J. Beckwith on October 3, 2008), affirmed, Case No. 08-4549 (6th Cir. April 27, 2010).  Applying the foregoing to the instant case, the decision of the state appellate court that the trial court's sentencing did not violate the Sixth Amendment was in accordance with the decision of the Supreme Court in Cunningham.

As a consequence of the foregoing, petitioner has failed to show that the state appellate court decision upholding his sentencing resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor that the decision was based upon an unreasonable determination of the facts in light of the evidence presented.

It follows that petitioner's seventh claim for relief is without merit.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits.

It is, therefore, recommended that the petition be dismissed without further proceedings.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:    April 30, 2010



## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).